Bessie DALY et al., Plaintiffs-Appellants,

v.

KANSAS CITY, Missouri, a Municipal Corporation, et al., Defendants-Respondents.

No. 46486.

Supreme Court of Missouri, Division No. 1.

Oct. 13, 1958.

Rehearing Denied Nov. 10, 1958.

Ernest D. Martin and Jay L. Oldham, Kansas City, for appellants.

Benj. M. Powers, City Counselor, John J. Cosgrove, Associate City Counselor, Kansas City, for respondents.

HOLMAN, Commissioner.

In the first count of their petition plaintiffs sought an equitable decree quieting their title to the land described therein, for other relief in the nature of an injunction, and for an accounting. The second count was in ejectment. The land involved is a portion of a tract condemned by the City of Kansas City, Missouri, in 1909, for use as a park. Some of the plaintiffs are persons who owned the land at the time it was condemned and others are heirs of deceased former owners. The defendants are Kansas City, Missouri, Federal Public Housing Authority, Paul R. McCauley, its director, and twenty-four individuals described as tenants occupying rental units in buildings erected upon the premises. The suit was filed March 22, 1948, but was not tried until June 3, 1957. Upon the trial the court sustained a motion for judgment filed by defendants at the close of plaintiffs' case and accordingly entered judgment for defendants. Plaintiffs have appealed.

In their petition plaintiffs alleged that the ordinance adopted December 3, 1908, by the defendant municipality for the purpose of condemning the instant property was illegal, because the city did not intend to take the property for public use but that it was a taking of property for private use. It was further alleged that the ordinance was filed in the circuit clerk's office and given No. 41,614; that Division 6 of the circuit court made an order of

publication and thereafter, on October 2, 1909, a judgment of condemnation was rendered in Division 5 of said court, it being alleged by plaintiff that neither Division 6 nor Division 5 had any jurisdiction in said cause for the reason that the cause was never assigned to either of said divisions by the assignment division of that court in accordance with the rules then in force; that in furtherance of its scheme to defraud, the city obtained a purported final confirmation and decree on May 9, 1914, in Division 5 of the circuit court which stated that a fee simple title was taken by the city in said condemnation proceeding.

It was further alleged that at some time thereafter the defendant city secretly and wrongfully built a large underground tunnel under and across said land for private use in going from General Hospital No. 1 to General Hospital No. 2; that in 1947, the defendant municipality, in violation of law, proceeded to go upon said land and erect, or permit other defendants to erect, seventeen buildings on said land which, it is alleged, the city rented to private individuals for private residences, and that by reason of the private use of said land in constructing the aforementioned tunnel and the said housing, the city has lost its easement to use said land as a park and all of its rights have reverted to the original owners or their heirs who, it is alleged, now own the land in fee simple, free of any rights of the defendants.

The defendants in their answer admitted that certain proceedings were had, as alleged, in Divisions 5 and 6 of the Circuit Court of Jackson County, Missouri, but denied that said divisions were without jurisdiction of the subject matter therein. It was further admitted in the answer that in 1934 and 1935 the city constructed a tunnel or conduit across a portion of said land which was entirely below the surface of the ground and was used for the purpose of conducting heat between a certain heating plant and General Hospital No. 2, and that said construction constituted no

diversion or interference in the use of said lands for park purposes. The defendants further admitted that the city entered into an agreement with the Public Housing Authority under which the city consented to the construction of temporary housing units upon said land for use as housing accommodations for veterans of World War II during a period of acute housing shortage in Kansas City, Missouri. (It is stated in defendants' brief that all of said housing units have now been removed.)

Among its defenses to the action, defendants pleaded that the owners of the land in question had received the compensation awarded in the condemnation proceedings and hence had waived any objections they might have had to the validity of said proceedings and are estopped to allege that said judgments are invalid. The statute of limitation was also pleaded as a defense.

In the trial of the case the only evidence offered by plaintiffs was a record of court rules 33, and 42 to 47 inclusive, which were in effect at the time of the condemnation proceedings, and the record of the assignment division of the circuit court at that time which, it is said, does not show that cause No. 41,614 was ever in the assignment division. The record was also introduced which showed the filing of the ordinance on January 12, 1909, and that on the same date, Judge Slover, Judge of Division No. 6, and also the assignment judge, made an order of publication. The defendants asked the court to take judicial notice of various orders made by the court in the condemnation case.

In the condemnation proceedings in question the defendant city followed the procedure specified in the Kansas City Charter of 1908 (compilation of 1909), Article 13, Sections 8 et seq. It is interesting to note that Section 28 provides that the city shall not be entitled to possession of the land until the amount of compensation determined is paid into court for the use of the persons entitled to the same, and upon such

payment the circuit court "in which proceedings were had, shall immediately order, adjudge and decree that the title in fee to, and every other interest in the land so condemned and taken for such park, road, boulevard, avenue or public use be divested out of such owner and other persons interested and vested forever in the city * * *."

As has been heretofore mentioned, plaintiffs claim that Division No. 5 of the Jackson County Circuit Court never had jurisdiction of the condemnation case. That contention is based upon the fact that the records of the assignment division do not in any manner refer to said case or show that it was assigned to Division No. 5, or any other division, as required by the court rules then in effect. This controversy arises from the fact that since 1903 the clerk of the circuit court has kept the record of condemnation cases in a separate set of books rather than in the assignment division and other divisional records. That condemnation record does show that the assignment division, on February 15, 1909, assigned the case to Division No. 5. It therefore appears that the issue presented does not actually involve a question as to the jurisdiction of Division No. 5, but involves the question as to whether the circuit clerk may keep a valid record of condemnation cases in a separate book or whether the proceedings in such cases must be kept in the assignment and divisional records.

■ We think it is clear that the Circuit Court of Jackson County had jurisdiction of the subject matter involved in the condemnation case and that said cause was properly lodged in the assignment division and thereafter transferred to Division No. 5. The records of the circuit court disclosing those proceedings are official records and may properly be considered in determining the question here presented. And that is true even though it may be assumed that the circuit clerk may not have kept the record of condemnation cases in a manner strictly conforming to the rules of court then in effect.

■ Plaintiffs also contend that the order of publication in the condemnation case was invalid because made by Division No. 6, to which division the cause was never assigned. Defendants admitted in their answer that the order was made in Division No. 6, but the transcript shows that the order was made by Judge Slover who was at the time judge of Division No. 6 and was the assignment judge. In that situation, and in the absence of proof to the contrary, it will be presumed that Judge Slover made the order in the proper division and as assignment judge. Moreover, we note that the following provision appeared in Rule 44 which was then in effect: "It shall be the duty of the assignment judge sitting in his own division when in session or acting in vacation when allowed by law also to hear all summary applications, demurrers, and preliminary motions and to make up the issues in pending cases." We have the view that the quoted provision authorized Judge Slover to sign the order in question while "sitting in his own division" (No. 6). The contention is without merit and is accordingly ruled against plaintiffs.

■ Plaintiffs next contend that the circuit court had no jurisdiction of the condemnation case because the city did not file a petition in said cause. We recognize that in Section 566, RSMo 1899, section 506.110 RSMo 1949, V.A.M.S., it is provided that suits may be instituted in courts of record by the filing of a petition, and that various condemnation statutes in effect at the time in question (such as Section 5376, RSMo 1899) required that a petition be filed in the circuit court. However, the difficulty with plaintiffs' position is that the city followed the procedure specified in the Kansas City Charter (of 1908) and that Section 11 of Article 13 thereof provided that the proceeding may be instituted in the circuit court by the filing of a certi-

fied copy of the ordinance. It has been held that in condemnation cases of this nature the charter provisions shall prevail as against the provisions of the general law upon the same subject. State ex rel. Graham v. Seehorn, 246 Mo. 541, 151 S.W. 716; Brunn v. Kansas City, 216 Mo. 108, 115 S.W. 446. We rule this point against plaintiffs.

Plaintiffs have also raised the point that the ordinance adopted as a part of the condemnation proceedings was invalid because it did not contain a declaration that the taking of the property was necessary. A copy of the ordinance was attached to plaintiffs' motion for new trial but was never offered in evidence. It is therefore not before us for consideration. We also note that plaintiffs alleged in their petition and contend in their brief that the condemnation proceeding was void because it constituted a taking of private property for private use. No evidence was adduced in support of that contention.

It is also contended by plaintiffs that in constructing the conduit heretofore mentioned, and in permitting the construction of the dwelling units on the land, the city has thereby devoted the land to a different and inconsistent use from that for which it was condemned, and hence the right of possession has reverted to plaintiffs as owners of the fee. The view we take of this question makes it unnecessary for us to decide whether or not the use complained of was a substantial diversion from the use of the land for park purposes.

Plaintiffs base their contention upon the premise that the city, in the condemnation proceedings, obtained only an easement to use the land in question for park purposes. In such circumstances it has been said that "if the use for which the land was taken is formally discontinued, permanently abandoned in fact, or becomes impossible or the land is devoted to a different and inconsistent use, the easement expires and the owner of the fee holds the land free from encumbrance." 18 Am.Jur., Eminent

Domain, Section 124, p. 747. However, it is stated in the same section that "When land has been acquired for the public use in fee simple unconditional, either by the exercise of the power of eminent domain or by purchase, the former owners retain no rights in the land, and the public use may be abandoned or the land may be devoted to a different use without any impairment of the estate acquired or any reversion to the former owners."

It is our view that the city obtained the fee simple title to the instant land in the condemnation proceedings. On May 9, 1914, the circuit court entered a decree in that cause in which it was adjudged "that the title in fee to and every other interest in the following lands so condemned and taken situated in the South Park District of Kansas City, Missouri, to-wit: * * * be and is divested out of the owners thereof and all other persons interested, and vested forever in Kansas City, Missouri." In so doing the court followed the express provisions of Charter Section 28, a portion of which we have heretofore set out in this opinion. As indicated, we hold that the foregoing decree vested the title in fee to said land in the municipality of Kansas City, Missouri. Chaplin v. Kansas City, 259 Mo. 479, 168 S.W. 763; State ex rel. Scott v. Trimble, 308 Mo. 123, 272 S.W. 66. Since the condemnation proceedings divested from the landowners every right and interest they had in the instant land, they could not acquire any interest by reversion, in the event of a diversion in use by the city, and hence are not entitled to the relief they seek herein.

We do not mean to indicate, however, that Kansas City may use the land in question for any purpose it may desire. Section 29 of the Charter of 1908 provides that "The lands which may be selected and obtained under the provisions of this article shall remain forever for parks, parkways and boulevards for the use of all the inhabitants of said city." We restrict our ruling upon that issue to the proposition that plaintiffs could not be vested with

any title or right of possession by reason of the alleged diversion in the use of the land from park purposes.

The judgment of the trial court was for the right parties and should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.