## CHARLES A. BRUNN and FRANKLIN J. DONNELL et al., Appellants, v. KANSAS CITY.

### Division One, January 14, 1909.

1. **CONDEMNATION: Interest on Judgment: City Charter.** No interest can be allowed on a judgment against Kansas City for damages for private property taken by the city to be used as a public park during the time an appeal is pending. The charter provision which says that "no interest shall be allowed or collected on the judgment or on the assessments until such judgment be affirmed or appeal dismissed" prevails over the general statute (R. S. 1899, sec. 3707), which says that interest shall be allowed on any judgment "from the day of rendering the same until satisfaction be made by payment." Nor is such charter provision in conflict with the provisions of the Constitution which says that "private property shall not be taken or damaged for public use without just compensation."

2. ———: **Delegation to City: Public Parks.** The constitutional power in the Legislature to delegate to cities the right of eminent domain to condemn property for parks for the common health and pleasure of the people, is no longer questionable.

3. ———: ———: **Code of Procedure.** And when a grant to a city of the size of Kansas City to exercise the power of eminent domain is made both by the Constitution and a legislative Enabling Act, then the city's right, in framing and adopting its charter, to provide a plan and code of procedure for exercising that power, is not an open question.

4. ———: ———: ———: **Exceptions.** When special charter provisions relating to procedure in condemnation cases are not inimical to the general scope of the policy of the Constitution and statutes, they govern as against the provisions of the general law; that is, such special provisions are to be considered as exceptions read into or grafted upon the general law.

5. ———: ———: ———: ———: **Interest on Judgments.** The provision of the Kansas City charter, withholding interest on a judgment in favor of the landowner in a condemnation case brought by the city, pending an appeal, must be read into the general statute, allowing interest on judgments. Such charter provision is a mere incident to the subject-matter of the exercise of the right of eminent domain and is implied in the main charter power granted to the city.

Appeal from Cass Circuit Court.—*Hon. N. M. Bradley,* Judge.

AFFIRMED.

*Frank F. Brumback* and *E. P. Garnett* for appellants.

The allowance of interest on the award, from its date, was necessary to complete plaintiffs' just compensation for the property taken. The jury found that they were entitled to that amount on that date; when the compensation was withheld for four years, there should have been added additional compensation, which is ascertained by calculating interest on the award from its date. Otherwise, the property-owner does not receive the just compensation for the property taken as provided by the organic law of the land. Any charter provision which limits any part of the just compensation is void. Lewis on Eminent Domain, sec. 499; Plum v. Kansas City, 101 Mo. 525; Martin v. St. Louis, 139 Mo. 246; In re Paseo, 78 Mo. App. 518; Hampton v. Kansas City, 74 Mo. App. 129; Warren v. Railroad, 41 Minn. 424; Melter v. Railroad, 37 N. J. L. 222; West v. Railroad, 56 Wis. 318.

*Edwin C. Meservey* and *Francis M. Hayward* for respondent.

The provision of the charter of Kansas City, article 10, section 18, in the case of taking land for public parks, is valid and not in conflict either with the Constitution or the statutes of the State. 15 Cyc. 930; Martin v. St. Louis, 139 Mo. 246; Phillips v. Pease, 39 Cal. 582; Chicago v. Wheeler, 25 Ill. 496; Fink v. Newark, 40 N. J. L. 533; Hamersley v. New York, 56 N. Y. 533; Erie Co. Com. v. Buffalo, 63 Hun 565; In re Dep. of Pub. Parks, 53 Hun 280; Pegler v. Hyde Park, 176 Mass. 101; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Ward, 134 Mo. 172; Kansas

City v. Oil Co., 140 Mo. 458; Kansas City v. Bacon, 147 Mo. 259; Kansas City Charter, sec. 19, art. 10.

LAMM, P. J.—This is a suit to recover interest on an award (or judgment) in a condemnation suit. Attending to the latter: In establishing its Penn Valley Park, Kansas City commenced an omnibus suit under article 10 of its charter, regulating its exercise of the right of eminent domain, in the circuit court of Jackson county, to take the real property of divers owners and to assess against that of others benefits to pay the damages for land taken. M. S. C. Donnell with many others owned tracts within the proposed park limits, and was made a party defendant. His parcels of land were covered by conveyances in trust, but these are immaterial to any question now submitted. The issues in that proceeding were submitted to a charter jury of six freeholders who made an assessment of benefits and an award of damages—Donnell's item being $28,762. (Note: Dates are material and should be kept in mind.) The award was made in the form of a verdict filed on the 24th day of April, 1897, covering 951 parcels of land. It was approved by, and judgment rendered in, said court on November 5, 1898, which judgment said nothing about interest. The cause of this delay in entering judgment is dark. Donnell elected to abide the judgment but other parties defendant appealed—many motions for a new trial and in arrest being filed and overruled. Time was taken to settle and file a bill of exceptions. It was extended by sundry entries until October 31, 1899, when the bill was filed.

In Banc in this court on June 30, 1900, the judgment was affirmed in an opinion by VALLIANT, J., concurred in by a majority of his brethren (157 Mo. 450). The mandate was sent down and filed below on July 11, 1900.

The face amount of the award in favor of Donnell was paid by the city into court in an interpleader proceeding in which Kansas City was plaintiff and Donnell and other claimants of the fund were defendants, on April 11, 1901. A referee was appointed in that case and at the time of the trial of the case at bar the latter case was still pending, but no point is now made on its pendency, or because other parties claim or are litigating over the *corpus* of the fund or the interest accruing.

The present plaintiffs are the administrators of the estate of M. S. C. Donnell, deceased, and of the estate of Catherine E. Donnell—trustee in the aforementioned trust conveyances affecting Donnell's lands. Prior to the interpleader suit, plaintiffs brought the present action to recover the interest at six per cent per annum on the original award. The cause went on change of venue to the Cass Circuit Court and was there heard by Judge Bradley.

In entering his decree the learned judge made a finding of facts covering matters heretofore stated, concluding on the law of the case as follows:

"3. The court finds that it was the duty of said defendant herein to pay into court at the time the said sum of $28,762 was paid, the interest on said amount from July 11, 1900, to April 11, 1901, at the rate of six per cent per annum, which amounted to $1,294.29, on said date.

"4. The court further finds, that as said sum of $1,294.29 was due and should have been paid into court on the said 11th day of April, 1901, the said sum of $1,294.29 should draw interest from said last-named date at the rate of six per cent per annum up to the rendition of judgment herein.

"5. The court finds all other issues herein in favor of the defendant.

"6. It is therefore considered and adjudged by the court, that said plaintiffs have and recover of and

from said defendant the said sum of $1,294.29, with six per cent interest thereon per annum, amounting in the aggregate to the sum of $1,659.85, together with all costs herein, and that execution issue therefor.''

From that judgment, plaintiffs appeal.

Section 18, article 10, of the charter of Kansas City provides that any party aggrieved by any verdict and judgment in a condemnation proceeding may appeal therefrom by filing the affidavit required in appeals in other civil cases and a bond, which bond and affidavit must be filed within twenty days from the rendition of the judgment of confirmation of the verdict. Moreover, that section has the following provision: *"In case of appeal, the judgment shall stand suspended until the appeal is disposed of, and no interest shall be allowed or collected on the judgment, or on the assessments until such judgment be affirmed or appeal dismissed.* No writ of error shall be allowed.''

Section 19 of article 10 of the charter follows: ''The common council shall have the power, with the concurrence of the board of park commissioners, at any time before any of the parties assessed with benefits shall have paid the amount so assessed, to repeal the ordinance ordering the proposed improvement, if such repeal be deemed for the best interests of the city; and in such event the judgment for compensation and benefits shall be void.''

The pleadings, evidence and instructions were sufficient to raise all points argued, *viz.*: On one side it is said that the provision of the city charter denying interest on the owner's award of damages, or (otherwise put) on the amount of the judgment in his favor, pending appeal, is unconstitutional and void; that it impinges on the provisions of the Constitution requiring ''just compensation'' to be made for private property taken for public use (Const., art. 2, sec. 21),

and that the statute (R. S. 1899, sec. 3707), giving six per cent interest on judgments, applies.

Section 21 of article 2 of the Constitution reads: "Sec. 21. That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad tracks without consent of the owner thereto shall remain in such owner, subject to the use for which it is taken."

Section 3707, Revised Statutes 1899, reads: "Sec. 3707. Interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made by payment, accord or sale of property; all such judgments and orders for money upon contracts bearing more than six per cent interest shall bear the same interest borne by such contracts, and all other judgments and orders for money shall bear six per cent per annum until satisfaction made, as aforesaid."

On the other side it is said that such charter provision is not obnoxious to the Constitution when construed in connection with section 16 of article 9 of the Constitution giving inhabitants of cities of more than 100,000 the right to frame a charter for their own government and giving the right to amend the same. It is further contended that the charter provision assailed supersedes the general statute on interest so far as concerns judgments in condemnation proceedings instituted under defendant's charter.

The learned trial judge took defendant's view of that proposition and plaintiffs assign error on the

point. Such, in brief, is the case and such the bone of contention on appeal.

At the outset it is well to say that it is not alleged or shown that Donnell accepted the face amount of the award and took down the money. Therefore the case is free from estoppel in that regard. Moreover, plaintiffs do not assail the general charter scheme adopted under the powers donated by the Constitution and statutory Enabling Act whereby Kansas City received her warrant of authority to frame a charter containing provisions for exercising the right of eminent domain. Therefore it cannot be said that plaintiffs in one breath deny the constitutionality of the general municipal scheme of sequestrating private property for public use for parks, and with the next breath claim the award under that scheme. Hence, there is no estoppel in that view of the case. Moreover, while in a brief of commendable directness and force plaintiffs' learned counsel lay some stress on the natural justice of their claim, whether as interest or as damages for withholding Donnell's award, and while they argue that the just compensation granted by the Constitution demands that the *corpus* of the award be increased by an increment of interest or damages to compensate the delay, yet we do not construe their brief, when viewed in its whole scope and true intendment, otherwise than as outlined in the proposition that the general statute allowing interest on judgments should stand and that the charter provision denying interest should fall. Furthermore, the case is free from embarrassment arising from the receipt of rent by Donnell during the pendency of the condemnation proceeding. His tracts of land were practically bare of improvements. They produced little rent or none, and defendant bases no claim on the receipt of rents during the delay in the condemnation case after the verdict of the jury and before the judgment of affirmance or during the pendency of the appeal in this court.

So, the case proceeds on the theory that, pending appeal in the condemnation case, defendant city did not take possession of the property. Whether its market value went up or went down pending the delay is not disclosed.

So much for preliminary observations tending to fetch a compass on the concrete case itself.

The books abound with cases in which courts have approached the vexed question of allowing interest on awards in condemnation proceedings from many sides. For example, in some cases there has been an absence of regulation of the question of interest in the scheme of procedure whereby the right of eminent domain is exercised by municipal or other corporations, or an absence of general statutory provisions relating to interests on judgments in such cases. All well-reasoned cases deem the judgment confirming the award and vesting the title out of its owner and into the plaintiff as a "judgment" as that term is used in statutes requiring interest to be paid on judgments. [Martin v. St. Louis; Plum v. City of Kansas, *infra*.] Some courts have taken the view that the additional compensation over and above the award, when that has been allowed, arises on principles of natural justice between man and man and rounds out and completes the idea of just compensation of the landowner. Cases and text-writers maintaining such views may be found collated in the briefs of counsel—*e. g.,* Metler v. Railroad, 37 N. J. L. 222; West v. Railroad, 56 Wis. 318; Warren v. Railroad, 21 Minn. 424.

But a good rule seems to be that when the matter of interest is regulated by the statute regulating procedure in exercising the right of eminent domain that statute should be given full play. It is said in a standard work (15 Cyc. 930-1): "Whether the interest is to be computed from the time of entry and possession, from the date of the vesting of the title to the land appropriated, from the date of the filing of the award,

from the date of the confirmation of the award or from a fixed time after its confirmation, from the date of entering the final order, from the time of demand, or from some time different from all of these, *depends upon the provisions of the statute under which the condemnation proceedings are had."*

In line with that general doctrine is the reasoning underlying Martin v. St. Louis, 139 Mo. 246, and Plum v. City of Kansas, 101 Mo. 525—both cases relating to the landowner's right to interest. The Plum case was under defendant's former charter which was silent on the question of interest. That case must be read in the light of that pertinent fact, and when its doctrine is sought (as it is) to be applied to the case at bar it must be borne steadily in mind that the charter of Kansas City has been altered in that vital particular. Article 10 of the present charter is an amendment adopted in accordance with the constitutional plan of amending it by vote of the people on June 6, 1895. The Plum case was decided in 1890. The Martin case was under the charter provisions of St. Louis and that charter was silent on the subject of interest. In both those cases the necessity of keeping within the charter provisions was assumed but in the absence of specific charter direction the problems up for solution were solved in the light of the provisions of general statutory law aided by equitable construction. That was the best the court could do in working out just results in the Plum and Martin cases.

The case, then, as once before said, hinges in last analysis on the question: Shall the general statute relating to interest on judgments be enforced or do the charter provisions relating to interest supersede the general statute and command obedience as valid law?

On that question we are of opinion that Judge Bradley found the right answer below. This, because:

The constitutional power in the Legislature to

delegate to cities in Missouri the right of eminent domain to condemn property for parks for the common health and pleasure of the people cannot be questioned at this late day. Further, when such grant is made by both Constitution and Enabling Act, as in this case, then the right of a city of the size of Kansas City, in framing and adopting its charter, to provide a plan or code of procedure for exercising the right of eminent domain is no longer an open question. These questions when new were not taken as granted and settled and answered as of course. To the contrary, they have been threshed out at the bar and settled by the appellate bench in a line of decisions familiar to students of municipal law, on full deliberation, on reason as well as authority, and need no new exposition. [Kansas City v. Bacon, 147 Mo. 259; State ex rel. Kansas City v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; Kansas City v. Ward, 134 Mo. 172; Kansas City ex rel. v. Scarritt, 127 Mo. 642.]

Further, it is settled law that when special charter provisions relating to procedure in condemnation cases are not inimical to the general scope of the policy of our Constitution and laws, then such special provisions govern as against the provisions of general law —that is, such special provisions may be likened to exceptions read into or grafted on the general law. [See authorities, *supra*.] Again, it must be taken as the accepted doctrine that powers granted, and charter provisions adopted pursuant, relating to the exercise of the right of eminent domain by a city of the class of Kansas City in establishing parks, boulevards and streets, pertain peculiarly to the domestic municipal affairs of such city and therefore come within the purview of its powers freed from interference by the Legislature, so long as such provisions do not contravene the general policy of our laws and Constitution. In fine, the constitutional idea was that charters under consideration should present a complete scheme of local

self-government and that where their provisions conflict with the general statutes on a *merely municipal regulation* (such as condemnation proceedings are held to be) the charter provisions should control; and it has been held that the constitutional plan for amending charters (sec. 16, art. 9), which directs that they shall be amended by a vote of the people "and not otherwise" is mandatory and forbids the regulation and direction of purely municipal affairs by act of the Legislature. [Kansas City v. Scarritt, 127 Mo. *supra*.]

Such is the undeniable doctrine of Kansas City v. Bacon, *supra*, and a line of cases therein discussed. The case was in Banc and was presented by an array of distinguished counsel. In the light of their briefs and arguments it was exhaustively considered and the above doctrine formulated as the law. In reaching that conclusion the court had the benefit of a learned dissenting opinion by SHERWOOD, J. In the majority opinion it was said: "It was unanimously ruled [referring to our former opinions under review], that condemnation proceedings by a city organized under section 16 of article 9 of the Constitution of Missouri in acquiring lands for streets, alleys, parks, etc., clearly fell within the domain of municipal government and regulation, and that this charter by virtue of the Constitution itself superseded the provisions of the general statutes on that subject so far as Kansas City was concerned. It would seem, therefore, that if any question is ever to be considered settled by judicial construction, and if the salutary principle of *stare decisis* is not to be actually ignored and discredited, the constitutionality of the freeholders' charter of Kansas City adopted in 1889 is no longer an open question." In that case; too, the amendment to the charter under consideration, *viz.*: article 10 adopted in 1895, was under review and was held to be in harmony with the Constitution and laws of Missouri (p. 272). As giving point to the discussion, it is not amiss to note that

it was contended in that case that a general act of the General Assembly pertaining to "every city in this State which is now or may be hereafter organized under and by virtue of the provisions of section 16 of article 9 of the Constitution of this State," and empowering every such city to establish and maintain a system of parks and boulevards was interposed as a defense, but the charter provisions were sustained in spite of that act.

In Kansas City v. Ward, *supra*, it was held (quoting from the syllabus) that "The provisions of article 10 of the charter of Kansas City are not a regulation of the practice, jurisdiction and judicial proceedings in the State circuit courts, contrary to the general laws of the State, inasmuch as said charter provisions supersede the laws of the State relating to such city."

We deem the cases cited controlling on the question presented at bar.

The delay incident to the Penn Valley Park condemnation proceeding was not unusual. There are no facts showing bad faith on the part of the city in the delay. The charter plan of procedure in acquiring parks contemplates that the city has the option to quit at any time before the payment of assessments has begun. If the city by its ordinance elects to quit then the judgment becomes void and the improvement plan falls to the ground. The charter plan further contemplates that a park scheme should go through as a whole or not at all, and be operative only when the courts have put their sanction upon it. An appeal being provided, it results that judicial sanction culminates in an affirmance of the judgment in the appellate court. The charter scheme further contemplates that interest on benefits as well as assessments of damages should not run pending the appeal. A case might be imagined where all this might work a hardship to the landowner. To illustrate: The filing of the petition to condemn and notice to the defendants was

in the nature of a *caveat* to all concerned, including the world at large, that the city had laid its hand on the property and that the proceedings might ripen into a sequestration of it.    Beginning from that time the owner's power to sell would be whittled away, his right to improve and develop the property would be in abeyance.    After judgment and pending appeal he would hold but a base or qualified fee subject to all inconvenience and injury having their root in that fact.    Finally, when the proceedings were dismissed by an election of the city not to go on with its scheme, the landowner, pinched in pocket, would have nothing but his memory of troubles and detriment suffered.    But all these things are but incidents of the exercise of the right of eminent domain, to which right every rood of land in a civilized state is subject; and neither the ingenuity nor wit of man has hitherto been adequate to discover any plan of general or special taxation, or for the establishment of boulevards, parks and streets, ideally equitable and free from inequalities and unfairness in an easily imagined case.    I doubt not that such Utopian plan for the future is but the irridescent dream of a dreamer.    As said by BRACE, J., in Kansas City v. Ward, *supra*:    "The inconveniences arising from the institution of these proceedings and the delay or ultimate failure that may mark the course of their subsequent prosecution are the necessary incidents of the right of eminent domain in an orderly and judicial manner and cannot be wholly provided against by legislation."

The charter provisions withholding interest on the judgment in favor of a landowner pending appeal must be read into the general statute allowing interest on judgments.    Such charter provision is a mere incident to the subject-matter of the exercise of the right of eminent domain and is implied in the main charter power granted to Kansas City.

In this case interest was allowed from July 11, 1900 (the date our mandate was filed and became operative), up to April 11, 1901 (the date on which the city paid the money into court). The allowance was well enough. Let the judgment be affirmed. All concur.